Date signed May 02, 2013



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Alfonzo Edward Gasaway II, | : | Case No.: 10-14060-WIL |
| | : | Chapter 7 |
| Debtor. | : | |
| _____ | : | |
| | : | |
| Michael G. Wolff, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary No.: 11-00744-WIL |
| | : | |
| James Dupree, | : | |
| Alfonzo Gasaway, Sr. | : | |
| Alfonzo Edward Gasaway II, | : | |
| John L. Gasaway, Sr., | : | |
| Angela F. Milhouse, | : | |
| | : | |
| Defendants. | : | |

_____

### MEMORANDUM OF DECISION

Before the Court is the Chapter 7 Trustee's Complaint to Set Aside Fraudulent

Conveyances and to Recover Monetary Damages (the "Complaint") and the Debtor's Answer

thereto.  The Court held a trial in this matter on September 11, 2012.  The Court has considered

the pleadings filed by the parties, the oral arguments and testimony given at trial, and the exhibits

admitted into evidence.  For the following reasons, judgment shall be entered in Plaintiff's favor, in part, and in Defendants' favor, in part.[1]

## I.    Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding as defined by 28 U.S.C. § 157(b).  To the extent any of the claims presented herein are non-core, the parties have consented to entry by this Court of a final order pursuant to 28 U.S.C. § 157(c).[2]

## II.   Background

The following facts are relevant to the Court's decision and are either undisputed or supported by the evidence presented at trial.[3]  The Complaint relates to three parcels of real property and the transfers thereof.  The first property is located at 6303 Osborn Road, Hyattsville, Maryland ("6303 Osborn Road").  The Debtor purchased 6303 Osborn Road from John L. Gasaway, Sr., the Debtor's grandfather and a named Defendant, on or about October 11, 2005, for the sum of $320,000.00.  The Debtor obtained an unsecured loan from CitiFinancial for the down payment on 6303 Osborn Road.  The Debtor also obtained a mortgage from CitiFinancial that was secured by 6303 Osborn Road.  Of the funds the Debtor obtained from CitiFinancial, $64,000.00 was paid to the Debtor's father, Alfonzo Gasaway Sr., also a named

---

[1] On December 15, 2011, judgments by default were entered against Anfonzo Gassaway [sic], Sr.; James Dupree; and Angela Milhouse.  On December 19, 2011, judgment by default was entered against John L. Gassaway [sic], Sr.  The hearing on damages to be awarded against each Defendant was held contemporaneously with the trial on the merits against the Debtor.

[2] Should the United States District Court for the District of Maryland subsequently determine that this Court lacked authority to enter a final order in this matter, this Memorandum of Decision shall constitute this Court's proposed findings of fact and conclusions of law.

[3] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

Defendant to this action, as reimbursement for renovations he performed to 6303 Osborn Road. The Debtor made payments on the unsecured loan he obtained for the down payment while the Debtor's father initially paid the mortgage payments.  On March 20, 2007, the Debtor executed a Quit-Claim Deed pursuant to which he transferred 6303 Osborn Road back to his grandfather for no consideration.  The Debtor's grandfather then filed a bankruptcy case for the stated purpose of allowing the Debtor's father additional time to try and sell 6303 Osborn Road.  The Debtor's bankruptcy Schedules include a deficiency claim in favor of CitiFinancial in the amount of $138,417.94, resulting from the eventual foreclosure sale of 6303 Osborn Road.  The Debtor's Schedule F includes two other unsecured claims held by CitiFinancial, one in the amount of $15,015.00 and the other in the amount of $14,542.00.  One of these unsecured claims represents the loan the Debtor obtained for the down payment on 6303 Osborn Road.

The other two properties included in the Complaint are abutting lots located at 6229 Columbia Avenue, Hyattsville, Maryland, also referred to as "Lot 6," and 6220 Osborn Road, Hyattsville, Maryland, also referred to as "Lot 7."  Lot 6 is an unimproved parcel of real property; Lot 7 contains a house.  The Debtor acquired Lot 6 and Lot 7 from Robert J. Bracey and Maureen A. Bracey on August 16, 2006, for the sum of $200,000.00.  The Debtor acquired these properties with the intent to renovate them with his father and resell them.  On August 17, 2007, the Debtor transferred Lot 7 to Angela Milhouse, a named Defendant to this action and an employee or former employee of the Debtor's father, for the sum of $300,000.00.  The HUD-1 Settlement Statement for the transfer of Lot 7 to Angela Milhouse reflects that the Debtor made a gift of equity to Ms. Milhouse in connection with the transfer in the amount of $60,000.00.  The Debtor also contributed $12,000.00 to Ms. Milhouse for "Closing Help."  The HUD-1 Settlement

Statement contains a line item for the Debtor to receive $41,601.12 from the sale of Lot 7. In his discovery responses, the Debtor stated that all the funds (from the transfer of Lot 7) were paid to or transferred to the Debtor's father, and that the Debtor was not the beneficiary of any of the funds. The Debtor's father acknowledged receiving the sale proceeds in his testimony at trial. The Debtor's father further testified that in exchange for giving Ms. Milhouse the gift of equity and the closing concessions, Ms. Milhouse intended to hire the Debtor's father to construct a second-story addition on the property.

On April 28, 2009, the Debtor executed, for no consideration, a Quit-Claim Deed pursuant to which he transferred Lot 6 to James Wesley Dupree, a named Defendant to this action and a business associate of the Debtor's father. There were no liens encumbering Lot 6 when it was transferred from the Debtor to James Dupree. The Debtor's father was indebted to James Dupree prior to the transfer of Lot 6. The Debtor's father testified that the transfer of Lot 6 to James Dupree satisfied a portion of his indebtedness to James Dupree.

On February 28, 2010, the Debtor filed a voluntary Chapter 7 petition (the "Petition Date"). On June 9, 2010, the Debtor received a Chapter 7 discharge. On January 14, 2011, the Trustee conducted a 2004 examination of the Debtor at which the Debtor testified under oath. At the 2004 examination, the Debtor testified that he did not know the financial details of the transactions with Angela Milhouse and James Dupree because the Debtor's father arranged both sales. The Debtor further testified at his 2004 examination that he just showed up and signed where he needed to sign with respect to the transfers of Lots 6 and 7. The Debtor was also clear in his discovery responses that he transferred all three properties at the request of his father.

4

On September 16, 2011, the Chapter 7 Trustee (the "Trustee") filed the Complaint alleging a civil conspiracy by the Defendants and seeking to avoid the transfers of the three properties. The Debtor was the only Defendant to file an answer or otherwise respond to the Complaint. At trial, the Debtor did not dispute that the three properties were transferred in the manners alleged by the Trustee. Moreover, the Debtor testified that at the time all three properties were transferred, the amount of his debts exceeded the value of his assets.

**III.    The Complaint**

Count I of the Complaint sought the avoidance of the transfer of Lot 6 to James Dupree pursuant to 11 U.S.C. § 548. Count II of the Complaint sought the turnover of Lot 6, or the value thereof, from James Dupree pursuant to 11 U.S.C. § 550. Counts III and IV of the Complaint sought the avoidance of the transfer of Lot 7 to Angela Milhouse pursuant to Md. Code Ann., Com. Law §§ 15-204 and 207, respectively. Count V of the Complaint sought the turnover of Lot 7, or the value thereof, from Angela Milhouse pursuant to 11 U.S.C. § 550. Count VI and VII of the Complaint sought the avoidance of the transfer of 6303 Osborn Road from the Debtor to John L. Gasaway, Sr. pursuant to Md. Code Ann., Com. Law §§ 15-204 and 207, respectively. Count VIII of the Complaint sought the turnover of 6303 Osborn Road, or the value thereof, from John L. Gasaway, Sr. Lastly, Count IX of the Complaint alleges that all of the Defendants participated in a civil conspiracy that divested the Trustee and the Debtor's bankruptcy estate of funds they would have received had the Debtor not transferred his properties prior to the Petition Date. Count IX seeks judgment against all of the Defendants for the full amount of the value of the properties on the date of their respective transfers, plus pre-judgment interest.

Because default judgments have been entered against all of the non-debtor Defendants, the only matter left for trial was the civil conspiracy allegation against the Debtor and the damages to be awarded against the various Defendants under all counts of the Complaint. With respect to Angela Milhouse, the Trustee requested damages in the amount of $60,000.00 for the gift of equity she received when she purchased Lot 7. With respect to James Dupree, who has since passed away, the Trustee requested a final judgment avoiding the transfer of Lot 6 from the Debtor to Mr. Dupree. With respect to John L. Gasaway, Sr., the Debtor's grandfather, the Trustee requested damages in the amount of $320,000.00 representing the amount of consideration paid by the Debtor to acquire 6303 Osborn Road. Alternatively, the Trustee requested judgment against John L. Gasaway, Sr. in the amount of $138,417.94 for the mortgage deficiency the Debtor owes to CitiFinancial as a result of the foreclosure sale of 6303 Osborn Road. Lastly, with respect to Alfonzo Gasaway, Sr. (the Debtor's father), the Trustee requested damages in the amount of $41,601.12 based on his participation in the alleged civil conspiracy, which represents the amount he received from the Debtor for the sale of Lot 7 to Angela Milhouse.[4] Additionally, the Trustee requested damages at trial in the amount of $400,000.00 to be awarded against the Debtor, the Debtor's father, and the Debtor's grandfather, jointly and severally, for their participation in the alleged civil conspiracy.

## IV.    Analysis

The gravamen of the Trustee's conspiracy allegations is that the Debtor's father developed a scheme by which he used the Debtor's good credit to obtain real estate for the father's benefit. The Trustee alleges that the Debtor's father devised a plan by which the Debtor

---

[4] At trial, the Trustee's counsel explained that pursuant to 11 U.S.C. § 546(a), the Trustee was barred from bringing a fraudulent conveyance action against the Debtor's father to recover the $41.602.12 because by the time the Trustee learned of the transfer, more than two years had passed since the entry of the order for relief in this case.

incurred significant debt to acquire various parcels of real property, and then the Debtor transferred the properties for less than adequate consideration and funneled any profits to his father rather than repaying the Debtor's creditors.  The Trustee asserts that the Debtor filed for bankruptcy after transferring away his property interests, thereby depriving his bankruptcy estate of assets that could have been used to satisfy claims.  In addition to determining damages against the defaulted Defendants, the issue left for trial was whether the Defendants' actions constitute a civil conspiracy.[5]  For this, the Court looks to state law.

Civil conspiracy is defined under Maryland law as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."  *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)). "A clear agreement to conspire is necessary because the '[i]ndependent acts of two wrongdoers do not make a conspiracy.'" *Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 821 (D. Md. 2005)(*quoting Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981)).  "Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff." *Id.*  The plaintiff must show more than an unlawful agreement─the plaintiff must prove "the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Hoffman,* 867 A. 2d at 290 (*citing Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1044-45

---

[5]  The Debtor received a Chapter 7 discharge on June 9, 2010, that discharged him from all prepetition obligations including the claims filed by the Trustee.  The Complaint does not request revocation of the Debtor's discharge or a determination that any judgment awarded against the Debtor be deemed nondischargeable.  Accordingly, judgment will not be entered against the Debtor.

(Md. 1995)).  As explained by the Court of Appeals of Maryland, a civil conspiracy may be

proven by circumstantial evidence:

> [A] conspiracy may be established by inference from the nature of the acts complained
> of, the individual and collective interests of the alleged conspirators, the situation and
> relation of the parties at the time of the commission of the acts, the motives which
> produced them, and all the surrounding circumstances preceding and attending the
> culmination of the common design.

*Id.*  at 291 (*quoting Western Md. Dairy v. Chenowith*, 23 A.2d 660, 664 (Md. 1942)).  "In a civil

case not involving a criminal act, conspiracy may be shown by a preponderance of the evidence

and may be proved by circumstantial evidence since almost never is direct evidence available."

*Daugherty v. Kessler,* 286 A.2d 95, 101 (Md. 1972).

A fraudulent conveyance or conveyance made with intent to defraud can satisfy the

"unlawful act" element of civil conspiracy.  *Rosen v. Gemini Title & Escrow, LLC (In re Hoang)*,

Adv. Proc. No. 09-00853, 2012 WL 195316, at *3 (Bankr. D. Md. Jan. 23, 2012)*(rev'd on other

grounds,* CA No. DKC 12-0593, 2013 WL 1105021 (D. Md. March 15, 2013)).  Nevertheless, in

analyzing a recent line of cases in Maryland courts and elsewhere, the Court in *Hoang* held that

"a claim for conspiracy to commit fraudulent transfer requires that the alleged conspirator must

be a party to the 'conveyance made' or the 'obligation incurred.'"  *Id.* at *5 (*citing* Md. Code

Ann., Com. Law §§ 15-204, 207).  Mere participation in the agreement underlying the injury is

not sufficient to impose civil conspiracy liability if the participant was not personally bound by

the "duty violated by the wrongdoing."  *Id. (citing BEP, Inc. v. Atkinson*, 174 F.Supp.2d 400,

409 (D. Md. 2001)).  In reaching this conclusion, the *Hoang* Court relied on the reasoning

expounded in *Bahari v. Countrywide Home Loans*, No. CCB-05-2085, 2005 WL 3505604 (D.

Md. Dec. 16, 2005) and *Atkinson* that "[w]here the conspiracy claim is based on an underlying

tort that requires a breach of a duty for the imposition of liability, the 'legally capable' requirement means that the plaintiff must assert the alleged conspirator 'owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty.'" *Id.* at *5 (*quoting Atkinson*, 174 F.Supp.2d at 409)). Recognizing that an alleged fraudulent conveyance does not require a showing of a breach of duty to establish liability, the *Hoang* Court concluded that "[i]mposing conspirator liability on a transferee or transferor is consistent with this principal [that the conspirator owe a duty] because it imposes liability on the parties who already fit squarely within the statute." *Id*. at *5. To hold otherwise would create a claim not recognized by the statute because there would be no legal nexus between the alleged conspirator and the plaintiff as required by *Atkinson*. *Id.*

In this case, the Trustee argues that with the exception of the initial transfer of 6303 Osborn Road from the Debtor's grandfather to the Debtor, all of the transfers described in the Complaint occurred within three years before the Debtor filed his bankruptcy petition. Accordingly, the transfers fall within the Maryland Uniform Fraudulent Conveyance Act and/or Section 548 of the Bankruptcy Code.[6] The statutory fraudulent nature of the transfers, *i.e.*, that they were effectuated with the intent to hinder, delay, or defraud creditors or for less than fair consideration, is therefore the tort underlying the alleged civil conspiracy. As admitted to by the Debtor's father at trial, Alfonzo Gasaway, Sr. was unable to purchase the subject properties himself and needed his son's good credit and willingness to participate for the transactions to occur. The Trustee asserts the Debtor was aware of the facts surrounding each transaction and was a willing participant. Although the Trustee does not allege that the acts causing damage to the estate were criminal, the transfers deprived the Debtor's creditors of funds that could have

---

[6] Default judgments have already been granted as to the fraudulent conveyances.

been used to pay their debts.  Accordingly, the Trustee maintains that the Defendants' actions constitute a civil conspiracy under Maryland law.

The Debtor does not dispute the facts surrounding each transfer.  The Debtor, however, denies that the transfers constitute a scheme or civil conspiracy.  The Debtor maintains that he did not understand the nature and/or consequences of his role in his father's plan and that all he did was sign documents.  The Debtor asserts that he trusted his father and simply did what he was told by his father.  The Debtor argues that the decline in the real estate market is the true cause of his financial problems and that he never intended to defraud his creditors.  Lastly, the Debtor acknowledges that the transfer of Lot 6 to James Dupree should be avoided and that he disclosed that transfer on his bankruptcy Schedules with full knowledge that it was avoidable. Beyond that, the Debtor denies any responsibility for the alleged harm to his creditors.

The Court has considered the undisputed facts, the arguments and testimony presented at trial, and the case law in this jurisdiction.  Based on the circumstances of this case, the Court concludes that the Trustee has met his burden of proof to establish a civil conspiracy between the Debtor and his father as to the transfer of Lot 7.  The Court further concludes that the elements of civil conspiracy are not met as to the transfers of 6303 Osborn Road and Lot 6.

In looking at the transfers as a whole, the Court agrees with the Trustee that the Defendants' actions in obtaining and transferring the aforementioned properties deprived his creditors of assets that could have been liquidated to satisfy their claims.  The Court also agrees that the Debtor's father orchestrated the above-described series of events.  In particular, the Court finds that the Debtor's father used the Debtor's credit to purchase properties and further finds that the Debtor was a willing participant in the transactions.  In so doing, the Debtor

10

incurred significant debt for his father's and grandfather's benefit.  Although the evidence did

not establish that the Defendants acted with bad intent initially, as the real estate market declined

and Alfonzo Gasaway, Sr.'s financial condition deteriorated, his directives to the Debtor and the

Debtor's compliance with those directives were detrimental to the Debtor's creditors.  The Court

does not find, however, that the challenged transfers constitute one scheme.  Rather, each

transfer was based on the financial needs and condition of the Debtor's father at that particular

time.  Accordingly, the Court will address separately whether the facts and circumstances of each

transfer constitute a civil conspiracy.

Addressing 6303 Osborn Road first, the Debtor purchased 6303 Osborn Road on or about

October 11, 2005.  The Debtor obtained a mortgage and additional unsecured debt from

CitiFinancial to pay the purchase price and down payment for the property.  Although the

Debtor's father testified that he received $64,000.00 of the loan proceeds that the Debtor

obtained from CitiFinancial, this transfer was not challenged by the Trustee as fraudulently made

because it occurred outside the three-year statutory period.  There being no fraudulent transfer,

there can be no civil conspiracy to commit a fraudulent transfer with respect to this initial

transaction.  Thereafter, on March 20, 2007, the Debtor, as transferor, executed a Quit-Claim

Deed pursuant to which he transferred 6303 Osborn Road back to his grandfather for no

consideration.  The Debtor's grandfather was the transferee of this transaction.  6303 Osborn

Road was ultimately sold at foreclosure and the Debtor was left with a mortgage deficiency

claim in favor of CitiFinancial in the amount of $138,417.94.  The Debtor's Schedule F includes

two other unsecured claims held by CitiFinancial, one of which represents the loan the Debtor

obtained for the down payment on 6303 Osborn Road.  Judgment by default has already been

11

entered against the Debtor's grandfather avoiding the transfer of 6303 Osborn Road from the Debtor to his grandfather as a fraudulent transfer.

The Trustee argues that the Debtor, the Debtor's father and the Debtor's grandfather conspired to transfer 6303 Osborn Road from the Debtor to the Debtor's grandfather for less than fair and adequate consideration in order to hinder the attempts of Debtor's creditors to satisfy their claims. The Debtor's father admitted as much during his trial testimony when he stated that he instructed the Debtor to transfer 6303 Osborn Road to the Debtor's grandfather to provide more time for him to sell the property. There is simply no doubt that the transfer of 6303 Osborn Road was orchestrated by the Debtor's father. Nevertheless, the Debtor's father was neither a transferee nor a transferor of the transaction. He was merely a participant. Accordingly, the Debtor's father owed no duty to the Trustee and cannot be liable for his role in the transfer under a civil conspiracy theory. *See Hoang*, 2012 WL 195316, at *4-5. The analysis does not end there, however. The Court must determine whether the Debtor and his grandfather conspired and whether Debtor's grandfather is liable for conspiracy for his role in the Debtor's father's scheme.

Both the Debtor and his father testified at trial. As stated above, the Debtor testified that he purchased and transferred 6303 Osborn Road at his father's direction. The Debtor's father testified that he instructed his son to transfer 6303 Osborn Road to the Debtor's grandfather to provide more time for him (the Debtor's father) to sell the Property. Their testimony and the documentary evidence proved that the Debtor's father conspired with the Debtor to hinder, delay or defraud the Debtor's creditors by instructing the Debtor to transfer 6330 Osborn Road for no consideration. The evidence also established that the Debtor's father conspired with the Debtor's grandfather to hinder, delay or defraud CitiFinancial by having the Debtor's grandfather file for

12

bankruptcy after he received 6303 Osborn Road.  Nonetheless, absent from both witnesses' testimony were facts evidencing a "clear agreement to conspire" between the Debtor and his grandfather.  *See Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d at 821.  The evidence failed to prove anything beyond a statutory fraudulent conveyance between the Debtor and his grandfather.  The Debtor testified at his 2004 examination that his father did not want the Debtor to file for bankruptcy so "the attempt was to have [6303 Osborn Road] go back to my grandfather's name so he could file bankruptcy without me having to do it so it wouldn't penalize me."  This makes it clear that at some point in time, the Debtor knew of his father's intention with respect to the property but there is no indication that the Debtor's grandfather was aware of the Debtor's father's overall plan prior to the transfer of the property to him.  There is also no evidence that the Debtor and his grandfather conspired with each other.  The evidence supports two separate transactions⸺the first consisting of the agreement between the Debtor and his father to transfer 6303 Osborn Road to the Debtor's grandfather for no consideration; the second consisting of the agreement between the Debtor's father and grandfather whereby the grandfather filed for bankruptcy after receiving 6303 Osborn Road to delay foreclosure attempts and provide the Debtor's father more time to sell the property.  This lack of nexus between the Debtor and his grandfather precludes this Court from finding either one liable for civil conspiracy for the transfer of 6303 Osborn Road.

The Court notes that although judgments by default have been entered against the Debtor's father and grandfather on Count IX of the Complaint "determining that [Alfonzo Gasaway, Sr. and John L. Gasaway, Sr.] conspired with the Debtor and others to transfer the Debtor's real property for less than fair and adequate consideration, hide any profit received

13

from the sale of the Properties, and hinder the attempts of the Debtor's creditors to satisfy their claims," the damages to be awarded on Count IX was reserved for trial. To the extent the Orders Granting Judgment by Default against the Debtor's father and grandfather have preclusive effect on their liability for the transfer of 6303 Osborn Road, the Court determines that their liability is $0.00 for that particular transaction for the reasons set forth above.

The analysis for the sale of Lot 7 to Angela Milhouse has a different result. Similar to 6303 Osborn Road, the transfer of Lot 7 has been avoided as a fraudulent transfer pursuant to the Order Granting Judgment by Default Against Angela Milhouse. Accordingly, the fraudulent nature of the conveyance forms the underlying tort for the Trustee's conspiracy allegation. As detailed above, the Debtor agreed to transfer Lot 7 to Ms. Milhouse for less than fair consideration. Specifically, the Debtor provided Ms. Milhouse with $12,000.00 in closing concessions and $60,000.00 in equity in connection with the sale of Lot 7. Additionally, the Debtor turned over the $41,601.12 in sale proceeds to his father with the added expectation that his father would be hired by Ms. Milhouse to construct a second-story addition. These concessions and gifts were made at the direction of the Debtor's father and were for the benefit of the Debtor's father. The Debtor received no benefit from this arrangement. Had these concessions and gifts not been made, the majority of the Debtor's creditors could have been paid from the sale of Lot 7. In this scenario, Ms. Milhouse was the transferee of the closing concession and equity gift. The Debtor was the transferor of the real property and the initial transferee of the sale proceeds. The Debtor's father was the immediate transferee of the $41,601.12 sale proceeds received by the Debtor as well as the initial transferee of the gift of funds. The Court finds that his role as both immediate transferee and initial transferee satisfies

14

the "legally capable" requirement necessary to find him liable for civil conspiracy in connection with the transfer of Lot 7.  *See Hoang*, 2012 WL 195316, at *5.  As stated previously, the Debtor has received a Chapter 7 discharge so no judgment will be entered against him for his role in transferring the sale proceeds to his father.

Lastly, with respect to Lot 6, the parties agree that the Debtor's transfer of Lot 6 to James Dupree for no consideration was a fraudulent conveyance.  Moreover, the Order Granting Judgment by Default Against James Dupree avoided the transfer of Lot 6 as a fraudulent transfer.  As with the transfer of Lot 7, the Debtor was the transferor of the real property and was a willing participant in the transaction, although he received no benefit from the transfer.  Rather, the evidence established that the transfer of Lot 6 was made at the direction of the Debtor's father and benefitted the Debtor's father because it satisfied a portion of his indebtedness to Mr. Dupree.  Again, however, the Debtor's father was neither a transferee nor a transferor of Lot 7.  He was merely a participant in the transaction.  Accordingly, the Debtor's father owed no duty to the Trustee and cannot be liable for his role in the transfer of Lot 6 under a civil conspiracy theory.  *See Hoang*, 2012 WL 195316, at *4-5.  As previously set forth, judgment by default has been entered against the Debtor's father on Count IX of the Complaint.  To the extent the Order Granting Judgment by Default against the Debtor's father has preclusive effect on his liability for the transfer of Lot 6, the Court determines that his liability is $0.00 for that particular transaction because he was neither a transferee nor a transferor of the property.

**V.    Damages**

The Trustee has requested judgment in the amount of $320,000.00 against John L. Gasaway, Sr. (the Debtor's grandfather) for the fraudulent transfer of 6303 Osborn Road.  This

represents the consideration paid by the Debtor to acquire 6303 Osborn Road. Alternatively, the Trustee has requested judgment against John L. Gasaway, Sr. in the amount of $138,417.94 for the mortgage deficiency the Debtor owes to CitiFinancial as a result of the foreclosure of 6303 Osborn Road. The Trustee provided no evidence as to the market value of 6303 Osborn Road at the time the property was transferred from the Debtor to his grandfather. The actual damages resulting from the transfer established by the Trustee is the deficiency claim from the foreclosure sale of 6303 Osborn Road and the unpaid balance on the loan incurred to purchase the property in the amount of $14,542.00.[7] Thus, the total judgment against John L. Gasaway, Sr. will be in the amount of $152,959.94, plus pre-judgment interest. For the reasons previously explained, no additional damages will be awarded against the Debtor or John L. Gasaway, Sr. pursuant to Count IX of the Complaint.

With respect to Lot 7, judgment will be awarded in favor of the Trustee and against Ms. Milhouse in the amount of $60,000, plus pre-judgment interest, representing the gift of equity Ms. Milhouse received in connection with the fraudulent transfer of Lot 7. Additional damages of $41,601.12, plus pre-judgment interest, will be awarded against Alfonzo Gasaway, Sr. for the sale proceeds he received from the Debtor in connection with the sale of Lot 7 pursuant to Count IX of the Complaint.

---

[7] As set forth previously, the Debtor's Schedule F includes three claims held by CitiFinancial: one in the amount of $138,417.94 resulting from the mortgage deficiency; one in the amount of $15,015.00 and one in the amount of $14,542.00. The parties were unsure which one of the smaller claims represents the loan the Debtor obtained for the down payment on 6303 Osborn Road. Because the Plaintiff did not establish that the higher amount represents the loan incurred for the down payment, the Court is using the $14,542.00 claim in its damages calculation.

16

With respect to the transfer of Lot 6 to James Dupree and as requested by the Trustee, a final judgment avoiding the transfer of Lot 6 will be entered. No additional monetary damages will be awarded for the transfer of Lot 6 pursuant to Count IX of the Complaint.

**VI.** **Conclusion**

For the reasons set forth herein, judgment is granted in favor of the Plaintiff and against Alfonzo Gasaway, Sr., in the amount of $41,601.12, plus pre-judgment interest, pursuant to Count IX of the Complaint; judgment is granted in favor of the Plaintiff and against Angela Milhouse in the amount of $60,000.00, plus pre-judgment interest; and judgment is granted in favor of the Plaintiff and against John L. Gasaway, Sr. in the amount of $152,959.94, plus pre-judgment interest. A separate Order will issue.

cc:     All Parties
        All Counsel

**END OF MEMORANDUM**